IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL FIERRO and CHRISTINE FIERRO, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) CIVIL ACTION |
| THOMAS GALLUCCI and FLORENCE GALLUCCI and | ) ) FILE NO. CV-06 5189 (JFB) ) |
| and | ) ) |
| VILLA POINTE LLC | ) ) |
| JAMES NICOTRA and ANN-MARIE NICOTRA | ) ) ) |
| Defendants. | ) |

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 1 ℃ 2007 ★

LONG ISLAND OFFICE

---

## MOTION TO DISQUALIFY COUNSEL

---

Michael R. Fierro
5148 Vinings Estates Way
Mableton, GA 30126
Filed: September 17, 2007

## PRELIMINARY STATEMENT

"The standards of the profession exist for the protection and assurance of the clients and are demanding; an attorney must avoid not only the fact, but even the appearance, of representing conflicting interests." (Cardinale v. Golinello, 43 N.Y.2d 288; 372 N.E.2d 26; 401 N.Y.S.2d 191 (1977) (*citing* Rotante v Lawrence Hosp., 46 AD2d 199; Edelman v Levy, 42 AD2d 758)). It is clear from the case law that in considering a motion to disqualify counsel, courts are not only concerned with the potential for confidential information to be used against a party, but also for the public trust in the legal system and the ability of individuals to have free and open discourse with their counsel. (*See* Greene v. Greene, 47 NY2d 447, 451: "Thus, attorneys historically have been *strictly forbidden* from placing themselves in a position where they must advance, or even appear to advance, conflicting interests. This prohibition was designed to safeguard against not only violation of the duty of loyalty owed the client, but also against abuse of the adversary system and resulting harm to the public at large." (emphasis supplied) (*citing* Cardinale, *supra* at 296; Eisemann v. Hazard, 218 NY 155, 159; Code of Professional Responsibility, DR 5-105); "Although it is usually recognized that a party to litigation may select an attorney of his or her choosing, this general right is not limitless. ... To hold otherwise would be to ignore the overriding public interest in the integrity of our adversary system." (Greene, *supra* at 453.))

Moreover, the highest level of suspicion exists when the matters are not just substantially related, but are on precisely the same subject matter. (*See* Greene, *supra* at 451: "Perhaps the clearest instance of impermissible conflict occurs when a lawyer represents two adverse parties in a legal proceeding." *and* Solow v. W.R. Grace & Co.,

1

83 N.Y.2d 303, 306: "A lawyer may not both appear for and oppose a client on substantially related matters when the client's interests are adverse." (citing Greene, *supra* at 451))

As Dollinger, Gonski and Grossman is representing the defendants on precisely the matter that I consulted with them when first considering the instant action, they should be removed as defense counsel immediately.

### *Background*

The defendants purchased our home in September of 2004, so that they could, according to the defendants, live closer to their family and friends in Rockville Centre. Shortly thereafter, the defendants took action to destroy the home and develop the property, immediately filling in the pool and submitting zoning plans to the town board. In late November / early December 2004, my wife and I first became aware of the defendants' true intent. Promptly upon learning of defendants' intentions, we consulted with legal counsel to determine what could be done about defendants' plans. It turns out that the firm with which we consulted is now counsel for the defendants. As soon as we realized that counsel was the same, we notified both this court and the defendants of the conflict, offering counsel the opportunity to disqualify themselves.

Based upon counsels' statements in court and in their letter, dated August 14, 2007, defense counsel has refused to do so. After hearing a very detailed explanation in court from Matthew Dollinger as to the history of their firm, the numerous protections they have in place to ensure that they do not engage adverse parties, and protestations that he had never heard of me or Bernadette Arnold, defense counsel subsequently admitted in their August 14 letter that the conversations Michael Fierro described at the hearing on

2

Case 2:06-cv-05189-JFB-WDW   Document 23   Filed 09/17/07   Page 4 of 21 PageID #: 167

August 7 did in fact take place.  More than that, defense counsel entered into the public domain their record of a phone message that Michael Fierro left for Mr. Dollinger.  This is exactly the type of disclosure that concerns us, and underscores the need to remove Dollinger, Gonski and Grossman as counsel for the defense immediately.

## LEGAL ANALYSIS

### I.  PRIOR REPRESENTATION CREATES AN UNAVOIDABLE CONFLICT

### A.  Standard of Review

As correctly stated by defense counsel in their letter to the Court dated August 14, 2007, the considerations a court should take in determining whether to remove counsel is (1) a prior attorney-client relationship, (2) whether the former and current client relationships are adverse and (3) whether the former and current client representations are substantially related. Solow v. W.R. Grace & Co., 83 N.Y.2d 303, 310.  While counsel's letter dated August 14 properly identifies this standard, they go on to disregard the facts and allege some ulterior motive for having counsel removed.

Applying this standard in the proper manner required by law leads to the inevitable conclusion that counsel is clearly conflicted, and should not waste this court's time (or its client's money) in fighting their removal.

### B.  Prior Attorney-Client Relationship

As set forth above, the first consideration in a motion to remove counsel is a prior attorney-client relationship.  Having already admitted to having discussions with Michael Fierro, defense counsel will no doubt try to claim that because they were never engaged

3

by Mr. Fierro, no attorney-client relationship existed. However, the failure to engage counsel is of no consequence.

> It has been held that where one consulted an attorney with a view to employing him, communications in the course of such preliminary discussions are subject to the attorney-client privilege, for if the privilege depended on the chance of whether the attorney after hearing the statement of the facts decided to accept the employment or decline it, "no person could even [sic] safely consult an attorney for the first time".

(NYU v. Simon, 130 Misc.2d 1019, 1021; 498 N.Y.S.2d 659, 661 (1985)) (*quoting* Estate of DuPont, 60 Cal App 2d 276, 289; 140 P2d 866, 873 (1943) *and citing* Benge v Superior Ct., 131 Cal App 3d 336, 182 Cal Rptr 275, 280 (1982); Taylor v Sheldon, 172 Ohio St 118, 173 NE2d 892, 895 (1961); McCormick, Evidence § 88, at 208 (3d ed 1984)). Courts have considered and rejected the notion that for an individual to be entitled to the protections of the attorney-client privilege, he must engage counsel first: "The general principle disqualifying one's former attorney from representing an adversary is not limited to situations where the prior representation was in a traditional attorney-client relationship." (NYU v. Simon, *supra* at 1021).

Plaintiff Michael Fierro consulted with Matthew Dollinger regarding this case. These facts are readily apparent from the phone records provided by the Dollinger firm, and are admitted in their August 14 letter. It is also apparent from the phone records disclosed by counsel, and as sworn by Michael Fierro in the affidavit submitted herewith as Exhibit A, that substantive legal discussions between Michael Fierro and Matthew Dollinger took place. Based on these discussions, a prior attorney-client relationship existed between Mr. Fierro and the Dollinger firm, within the meaning of the three-part test set out by *Solow v. Grace*.

4

It should be pointed out that it is clear from the current action that neither consent to the Dollinger firm's current representation nor permission to disclose discussions has been given. The Dollinger firm took it upon themselves to unnecessarily disclose the contents of the phone message attached as Exhibit B, and plaintiffs are considering referring this disclosure to the state ethics board.

*Conflict runs to entire firm.*

For the reasons stated above, an attorney-client relationship existed between Matthew Dollinger and Mr. Fierro, barring Matthew Dollinger from representing the defendants in this action. It is a well-established rule in New York that if one counsel of a firm is conflicted, the entire firm is conflicted. (*See* Cardinale, *supra* at 295)

It is not enough to claim, as defense counsel has attempted, that the counsel in question does not recall the representation or that counsel will be sealed off from the representation. As the court observed in *Cardinale*:

> The limitation arises simply from the fact that the lawyer, or the firm with which he was then associated, represented the former client in matters related to the subject matter of the second representation. Accordingly, it is no answer that the lawyer did not in fact obtain any confidential information in connection with the first employment, or even that it was only other members of his firm who rendered the services to the client.

Id. Based on the established precedent, Matthew Dollinger's conflict extends to the entire Dollinger firm, and counsel should be removed immediately.

## C. Current Relationships Adverse

In the current action, the Dollinger firm represents the defendants, where the plaintiff is the party seeking removal due to the conflict. This is the definition of an adverse relationship.

Case 2:06-cv-05189-JFB-WDW  Document 23  Filed 09/17/07  Page 7 of 21 PageID #: 170

**D.    Representations are Substantially Related**

It is clear from the phone record provided by the defendants that the representation of the plaintiff concerned the subject home. The line "he doesn't want it to be too late; [t]hey are going to tear the house down" makes it clear that the consultation concerned the plaintiffs' former home, which defendants shortly thereafter demolished in order to develop the property. More than just "substantially" related, the consultation concerns the exact same subject matter. And as stated above, when the representation concerns adverse parties on precisely the same subject matter, courts are to review the representation with the utmost skepticism. (*See* Greene, *supra* at 451.)

**II.    DEFENSE DISCLOSURE AND
        CONTINUED REPRESENTATION
        WOULD GIVE DEFENDANTS
        GROUNDS TO APPEAL**

Defense counsel has disclosed its record of a telephone message Michael Fierro left for Mr. Dollinger, attached hereto as Exhibit B. Included in that phone record is the statement "He looked at fax and still wants to do this ... [b]ased on what you sent him, ... [t]hey are willing to take a chance." (*Exhibit B*) Plaintiffs object to the characterization by the Dollinger firm's receptionist of initiating this action as "tak[ing] a chance". But clearly, what can be inferred by this statement is that a portion of the discussion between Michael Fierro and Matthew Dollinger revolved around the likelihood of success in any action, and this is confirmed by the Affidavit of Michael Fierro in the Affidavit. Regardless as to whether the odds of success are 5% or 95%, it is implicit in any such conversation, and in the statement which defense counsel disclosed, that plaintiffs have a legitimate claim. If counsel were permitted to continue representing defendants and plaintiffs' action prevailed, the defense would undoubtedly appeal, and potentially

6

engage alternative counsel at that time which would allege that the Dollinger firm did not represent defendants adequately, that the Galluccis and Nicotras themselves did not give adequate consent to the representation, etc. In essence, by continuing this representation they are giving their clients grounds for appeal, and are jeopardizing the timely and cost-effective resolution of this action.

## III.   IT MAY BE NECESSARY TO CALL MATTHEW DOLLINGER AS A WITNESS

Pursuant to Disciplinary Rule DR 5-102, counsel that may be called as a witness should not properly represent one of the parties in action. (*See* Code of Professional Responsibility DR 5-102 (22 NYCRR 1200.21); *and* Skiff-Murray v. Murray, 3 AD3d 610, 611, 771 N.Y.S.2d 230 (2004))

In this case, defense counsel is attacking certain actions taken (or not taken) by the plaintiffs. Unfortunately for defense counsel, such action was taken upon the advice of Matthew Dollinger, which advice was given during the discussions at issue. If these attacks continue, it may be necessary that plaintiffs will be required to show their reason for taking such advised action, and to do so would require calling Matthew Dollinger as a witness.

Further, now that defense counsel has submitted their phone records into the public record of this case, it may be necessary to question representatives of the Dollinger firm as to its authenticity and interpretation.

For these reasons, in addition to the reasons set forth above, the Dollinger firm should be disqualified as counsel.

7

## IV.    JUDICIAL DISCRETION TO
##         OVERRIDE ESTABLISHED
##         STANDARDS IS NOT WARRANTED

### A.    Removal is Fair

It is readily apparent from defense counsel's August 14 letter that they are well

aware that they blatantly fail the test set out by the *Solow* court, and therefore have no

option but to appeal to the court's equity powers to allow them to remain as counsel,

attempting to couch plaintiffs' request as an illegitimate stall tactic designed to run up

costs on the defense.  Considering the early stage of the proceedings (discovery has not

begun, no motions have been decided and no arguments have been heard), it would be

relatively simple at this stage to allow alternative counsel to take over litigation.  While

that solution could adequately serve the needs of their client, it would certainly be less

beneficial to the Dollinger firm itself, the only party currently in this action that benefits

from a protracted litigation.

It is only because defense counsel is refusing to live up to their ethical obligations

that their current clients are incurring additional costs.  In the process, they are running

up additional time and costs of the plaintiffs, and delaying our day in court.  There is little

risk of the defendants engaging alternative counsel that is similarly conflicted and this

issue arising again.  In addition to the Dollinger firm and Ms. Arnold (who represented

plaintiffs at closing), any other attorneys that the plaintiffs consulted on this matter are

relatives or friends of the plaintiffs, none of whom regularly practice in the area of real

estate litigation, and none of whom are likely to be retained by the defense.

Defense counsel has attended a scheduling hearing, prepared a motion to dismiss

and a reply brief.  No arguments have been heard, no diligence has been performed.

8

They are hardly vested or integral to this case. As the court observed in Flushing

National Bank v. Municipal Assistance Corporation, 90 Misc.2d 204, 212; 397 N.Y.S. 2d

662, 668, "While [disqualification] would deprive [plaintiff] of counsel of his original

choice, it does not differ from any other situation where a conflict prevents a client from

proceeding through a particular attorney." (*quoting* Rotante v. Lawrence Hosp., 46 AD2d

199, 200.)    As stated many times before in this motion, defense counsel should be

removed immediately.

**B.    Substance of the Confidential Discussions**

Any discussion of the equities of this motion should also consider the substance

of the discussions between Matthew Dollinger and Michael Fierro, and the substantive

claims of this action. Generally speaking, what are the subjects that one discusses with

counsel when considering suing someone for tearing down your home under false

pretenses? You would discuss potential claims against that person. You would discuss

potential defenses that such persons could raise against you. If both parties are attorneys,

you would perhaps discuss relevant case law. You would discuss the amount of money at

issue. Where multiple parties are involved, you would discuss the relative culpability of

those parties. Pursuant to paragraph 5 of the Affidavit of Michael Fierro attached as

Exhibit A, we discussed all of these items. In fact, we discussed *all* of the topics that

should be discussed when representing a party in an action. These facts all point to the

inevitable conclusion that defense counsel is clearly conflicted in this case, and having

refused to recuse themselves, should be removed immediately.

The fax that is referred to in the phone record attached as Exhibit B contained

relevant case law pertinent to the instant action. Messrs. Fierro and Dollinger discussed

9

this case as precedent for plaintiffs' claims. This case law is a portion of what Mr. Fierro refers to in the attached Affidavit when stating that he discussed relevant case law and other legal theories with Mr. Dollinger.

It should be noted that upon the authority of numerous courts, a party requesting removal is not required to disclose the specifics of the conversations with counsel, for to do so would defeat the object of the motion. (*See* Nicols v. Village Voice, 99 Misc.2d 822, 855; 417 N.Y.S.2d 415, 418:

> the person seeking disqualification, "need show no more than that the matters embraced within the pending suit ... are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained."

(*quoting* T. C. Theatre Corp. v. Warner Bros. Pictures, 113 FSupp 265, 268-269)). All that is required is to disclose generally the discussions, which plaintiffs have done adequately through the attached Affidavit, with enough specificity to allow the court to rule, but without disclosing so much as to defeat the privilege this action is trying to protect.

## C.    Mr. Dollinger's Failing Memory Does Not Excuse Removal

Mr. Dollinger has protested that he recalls nothing of me or our conversations, and because of this plaintiffs are protected from the conflict and should not be able to contest their current representation. This argument fails for two reasons.

First and foremost, established precedent makes it abundantly clear that even the

appearance of impropriety should be preserved, not just for the firm in question, but for

the profession as a whole. (*See* Nicols, *supra* at 825:

> As the Court of Appeals of the Second Circuit said in Emle Inds. v
> Patentex, Inc. [478 F2d 562, 571]: "The dynamics of litigation are far too
> subtle, the attorney's role in that process is far too critical, and the public's
> interest in the outcome is far too great to leave room for even the slightest
> doubt concerning the ethical propriety of a lawyer's representation in a
> given case. These considerations require application of a strict
> prophylactic rule to prevent any possibility, however slight, that
> confidential information acquired from a client during a previous
> relationship may subsequently be used to the client's disadvantage."

*and* Tekni-Plex v. Meyner and Landis, 89 N.Y.2d 123, 131; 674 N.E.2d 663, 667:

> By mandating disqualification irrespective of any actual detriment--that is,
> "even when there may not, in fact, be any conflict of interest" – the rule
> also avoids any suggestion of impropriety on the part of the attorney
> (Solow v Grace & Co., 83 NY2d at 309; see also, Cardinale v Golinello,
> 43 NY2d at 296). This not only preserves the client's expectation of
> loyalty but also promotes public confidence in the integrity of the Bar.
> Finally, the bright line rule provides a clear test that is easy to apply,
> thereby allowing self-enforcement among members of the Bar (Solow v
> Grace & Co., 83 NY2d at 309, *supra*).)

*Tekni-Plex* does go on to note some countervailing interests which may be

considered to as to prevent abuse of the rule, as defense counsel notes in its August 14

letter (justice may be blind, but she is not stupid), the instant case is not the situation with

which the *Tekni-Plex* court was concerned.

Even in situations where the conflicted attorney is effectively walled off from

involvement in the current transaction, or where the attorney no longer works at the firm

and so cannot possibly be involved in the case, courts have held that the conflict warrants

removal of counsel. (*See* Cardinale and Solow, *supra*.)

11

But beyond this, defense counsel has shown a blatantly cavalier attitude regarding their ethical obligations toward the plaintiffs. First in failing to recuse themselves once they became aware of the conflict, and then again by taking it upon themselves to disclose their internal notes of a phone message Michael Fierro left for Mr. Dollinger. Disciplinary Rule 4-101 (B) prohibits a lawyer from disclosing "a confidence *or secret* of a client." (emphasis supplied)  "Secret" is defined as "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." [DR 4-101, 1200.19]  Clearly, through plaintiffs' letter dated July 9, 2007 disclosing the conflict and requesting that defense counsel recuse themselves, plaintiffs did not want disclosures made about conversations between plaintiffs and the Dollinger firm. Defense counsel still took it upon themselves to enter their notes into the public record. The note-taker's comment that plaintiffs are "willing to take a chance" is a disclosure which any attorney should reasonably know could be seen as an unfavorable characterization of plaintiffs' claim (and which plaintiffs consider greatly misleading), and which a firm that takes seriously its ethical obligations would not disclose unless absolutely necessary. The court only asked the Dollinger firm to check its phone records; the firm was never required to disclose the substance of those records and should not have done so without plaintiffs' consent or a clear order by the court, neither of which is the case here. Matthew Dollinger has protested that he recalls nothing of our conversations, and so there is no need for plaintiffs to be concerned with the conflict. Yet even after the conflict has been highlighted to them, defense counsel disclosed a secret, if not a confidence, of their

12

former client. This disclosure underscores the need to have defense counsel removed immediately.

## V.    **CONCLUSION**

In sum, this is not even a close call. To hold that counsel may continue to represent the defendants would be a radical departure from established precedent, and would set an unknowable standard for future parties. For when is it more appropriate to remove counsel than when the action concerns the exact same subject matter on which advice was given, and the motion to remove counsel is brought before any motions have been decided or arguments have been heard?

This matter should be settled swiftly and decisively, in order to prevent, to use defense counsel's words, the further "loss of time and money," as well as any further impermissible disclosures by defense counsel, and to allow the litigants to move on with the substantive issues in this matter.

Thank you for your time and consideration.

Dated: September 17, 2007

Respectfully submitted,

By:

Michael Fierro
pro se attorney for the plaintiffs
5148 Vinings Estates Way
Mableton, GA 30126
770-262-0312

13

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL FIERRO and CHRISTINE FIERRO, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| THOMAS GALLUCCI and FLORENCE GALLUCCI and | ) CIVIL ACTION ) ) FILE NO. CV-06 5189 (JFB) |
| and | ) ) |
| VILLA POINTE LLC | ) ) |
| JAMES NICOTRA and ANN-MARIE NICOTRA | ) ) ) |
| Defendants. | ) ) |

## AFFIDAVIT OF MICHAEL FIERRO

COMES NOW, Michael Fierro, before the undersigned officer duly authorized to administer oaths and after being duly sworn, deposes and states as follows:

1.

I am over the age of eighteen (18) years. I am competent to testify to the facts stated herein and have personal knowledge of the following statement of facts.

2.

I am one of the plaintiffs in the above-referenced case against the defendants, an action for fraud concerning the sale of our former home to the defendants.

3.

In late November – early December of 2004, I consulted with Matthew Dollinger of the firm of Dollinger, Gonski & Grossman on at least two, possibly three occasions.

4.

The subject of my conversations with Mr. Dollinger related to potential claims for fraud against the defendants in the above-referenced lawsuit, relating to the sale of our former home.

5.

During the conversations, Mr. Dollinger and I discussed the underlying facts of the case, potential claims against the defendants, potential defenses available to the defendants, dollar amounts at risk, and relevant case law and other legal theories applicable to the facts in issue.

6.

The fax referred to in the copy of the phone record submitted by the Dollinger firm in their letter dated August 14, 2007 is of relevant case law concerning plaintiffs' claim.

7.

I have not consented to the Dollinger firm's representation of the defendants in this action.

8.

I have not consented to the disclosure of any of the contents of my conversations with any employee of the Dollinger firm nor of any other confidential information

concerning this case in the Dollinger firm's possession, nor have I waived the attorney-client privilege covering my conversations with the Dollinger firm and its employees.

FURTHER AFFIANT SAYETH NOT.

This 17ᵗʰ day of ___September___, 2007.

_____
Michael Fierro


Sworn to and subscribed before me
this 17ᵗʰ day of ___September___, 2007.

_____
Notary Public

My Commission Expires: May 22, 2011

# EXHIBIT B

Case 2:06-cv-05189-JFB-WDW   Document 23   Filed 09/17/07   Page 20 of 21 PageID #: 183

██████████ calling re: financial matter

████████ calling

---

**2-9:**
rom last evening: ███████████████████
0-19-04 accident with ██████████
█████████ Claim No. ████████████

██████ calling, call them on cell ███████████ call before 11am,
fter that, call them at the office

lease speak to ████ re; ████████████████ case,
take the deposition of ████████████, attorney for seller, lives in Florida
he agrees to participate, fine,
ut if not, JK to
nd do we want, ████████████, she is the principle of ██████████, she is 80 years old, ████████████
█████████████████

████████████████████ called, returning your call

██ calling 3:55pm , important you and he speak.
le was surprised you were not in the office stating, that you just spoke to ███████████████

██████████ calling, referred by ██████████.. regarding a problem he is having with a lease with government as
nant ... believes MD spoke to

████████ is President of ██████████████

e'll fax papers over to you to review, as an introduction, the wonderful note he got from government.

████████ calling, pls return call     ████████████████████

---

**2-10:**
██ called this morning

██████████ calling, pls return call ██████████

██████████, called, re: trusts for ██████████████

██████████ calling re: ██████ situation, pls return call ███████████

██████████ calling, returning your call ██████████

██████████ wants to speak to you about ██████████████



█████████ calling re:█████████████████ He previously called because he received a letter from███████
█████that says he doesn't own the property and requests that he sign a quit claim deed.  He has money invested in this.
Pls call to discuss████████████████
--

██████ calling, pls return call

FAX from████which is letter to█████████████████
--

Michael Fierro (also an attorney, but not a litigator) calling.  Bernadette Arnold spoke to MD yesterday about this.
He looked at fax and still wants to do this.  404-870-3753 (Atlanta GA)
Based on what you sent him, the
They are willing to take a chance
And time is really pressing, he doesn't want it to be too late
They are going to tear the house down.
--

fax from████████████ re:█████████████
--

██████████████ calling, pls return call███████████████
_____

12-13:
████████████, he'll try you in the car
fax attached on█████"Opposition"
--

███████████returning your call████████████ = cell
pls return call
--

███████calling, he wants letter redone
He insists that language state (i) we are having████interpreter and (ii) we are videotaping the testimony.

████████████████████ office, faxing revision to settlement agreement
attached

██████ agreements came in, gave to█████████
████was home with████today,████was ill)
--

████████ sent papers w/ note on top: This is all I could find.
Copy and send to██████████

████████ calling, when you get in, ███████got him this morning,
MD directed him with██████ not sending out check
He has problem with left ear, so he has dr. appointment so he'll be unavailable between 1pm and 3:30
--

████████████████████████████friend, pls return call regarding a favor
Home██████████████
efrral:████████████████
--

██████████ calling, ████████████████