# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 06-CV-5189 (JFB) (WDW)
_____

MICHAEL FIERRO AND CHRISTINE FIERRO,

Plaintiffs,

VERSUS

THOMAS GALLUCCI AND FLORENCE GALLUCCI,

AND

VILLA POINTE LLC, JAMES NICOTRA AND ANN MARIE NICOTRA
Defendants.

_____

MEMORANDUM AND ORDER
December 4, 2007
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs Michael and Christine Fierro brought this action against Thomas and Florence Gallucci, Villa Pointe LLC, and James and Ann Marie Nicotra, claiming that defendants committed fraud by making false and misleading statements to the plaintiffs in order to induce plaintiffs to enter into a contract of sale for their home. Plaintiffs contend that the subsequent demolition of the home and development of the property constitute, among other things, fraud, fraudulent inducement, and breach of contract. Plaintiffs now move to disqualify defendants' counsel – namely, the law firm of Dollinger, Gonski, and Grossman (hereinafter, "the Dollinger Firm" or the "Firm") – because, according to Michael Fierro, he consulted with a member of the Dollinger Firm almost two years prior to bringing this lawsuit about the subject matter of this lawsuit. As set forth below, the motion to disqualify is granted.

I. BACKGROUND

A. The Amended Complaint

This case involves the plaintiffs sale of their residence at 327 Lakeview Avenue in Rockville Centre, New York (hereinafter, the "Residence"), to Thomas and Florence Gallucci (hereinafter, the "Gallucci Defendants").

According to the amended complaint, plaintiffs were introduced to the Gallucci Defendants by James and Ann-Marie Nicotra (hereinafter, the "Nicotra Defendants"), who reside immediately adjacent to the Residence. (Amended Compl. ¶ 8.) The amended complaint alleges that the Gallucci Defendants, the Nicotra Defendants, and an LLC created by the Galucci Defendants – namely, Villa Pointe LLC – "were partners in a scheme to con the Plaintiffs into selling the Galucci Defendants their Home, and to then tear it down and develop the property with new homes." (*Id.* ¶ 9.) Specifically, it is alleged that the Gallucci Defendants fraudulently concealed their intention to tear down the home and develop the property. (*Id.* ¶ 11.) Less than one week prior to the consummation of the contract of sale in August 2004, the Gallucci Defendants allegedly informed plaintiffs that they wished to have the right to purchase the home under the contract of sale transferred to the Villa Pointe LLC. (*Id.* ¶ 19.) According to the complaint, prior to the agreement to this assignment of rights to the LLC, plaintiffs asked the Gallucci Defendants whether they intended to tear down the Residence and the Gallucci Defendants denied any current intention to tear down the home. (*Id.* ¶¶ 23-24.) The complaint further alleges that, within one month after the closing on the Residence, the Gallucci Defendants had arranged for the property to be re-zoned for two homes and, shortly thereafter, had the Residence destroyed. (*Id.* ¶¶ 28-29.) Plaintiffs allege that, pursuant to a partnership with the Nicotra Defendants, the Gallucci Defendants (through the Villa Pointe LLC) built two new residences in place of the Residence which sold for approximately $1,300,000 each. (*Id.* ¶¶ 30-31.)

Plaintiffs allege, among other things, that the Gallucci Defendants and Nicotra Defendants made false and misleading statements prior to the signing of the contract of sale in order to fraudulently induce them to enter into the contract of sale for the purchase of the Residence. (*Id.* ¶¶ 35,45.) Plaintiffs contend that "had the [Plaintiffs] known about Defendants' plan to tear down their Home, and had it not been for Defendants' false and misleading statements to Plaintiffs, Plaintiffs would have never sold the Home to Gallucci Defendants, nor would they have agreed to the assignment for the contract of sale to the LLC or the waiver of the rights under the contract of sale." (*Id.* ¶ 32.)

B. Facts Regarding Disqualification Motion

According to plaintiffs, in late November/early December of 2004, plaintiffs became aware of defendants' intentions and actions to demolish plaintiffs' former residence and develop the property. According to Michael Fierro, he then consulted with Matthew Dollinger, Esq., of the Dollinger Firm on at least two, and possibly three, occasions. (Michael Fierro Affidavit ¶ 3.) Mr. Fierro stated in his affidavit that these conversations related to potential claims pertaining to the subject matter of this action:

> The subject of my conversation with Mr. Dollinger related to potential claims for fraud against the defendants in the above-referenced lawsuit, relating to the sale of our former home. During the conversations, Mr. Dollinger and I discussed the underlying facts of the case, potential claims against the defendants, potential defenses available to the defendants, dollar amounts at risk, and

2

relevant case law and other legal theories applicable to the facts in issue.

(*Id.* ¶¶ 4-5.) Mr. Fierro further contends that a fax was sent to him relating to the relevant case law pertaining to plaintiffs' claim. (*Id.* ¶ 6.) Finally, Mr. Fierro states the following: (1) "I have not consented to the Dollinger firm's representation of the defendants in this action" (*Id.* ¶ 7); and (2) "I have not consented to the disclosure of any of the contents of my conversations with any employee of the Dollinger firm nor of any confidential information concerning this case in the Dollinger firm's possession, nor have I waived the attorney-client privilege covering my conversations with the Dollinger firm and its employees" (*Id.* ¶ 8). Plaintiffs decided not to retain Mr. Dollinger and his Firm to represent them in this matter and filed this lawsuit *pro se* on September 25, 2006.

Mr. Dollinger stated in an affirmation to the Court that he has "absolutely no recollection of ever having been contacted by Michael Fierro, or anyone on behalf of the plaintiffs." (Dollinger Affirmation ¶ 5.) Mr. Dollinger further stated that he does "not recall ever speaking with Bernadette Arnold, Esq., who apparently was Mr. Fierro's real-estate attorney in connection with the transaction underlying the plaintiff's lawsuit." (*Id.*) However, at the Court's request, Mr. Dollinger searched the Firm's records to determine whether there is any documentation reflecting contact with Mr. Fierro.[1]

A search of the Firm's records revealed a record of a phone message from Mr. Fierro taken by Mr. Dollinger's Office Administrator on December 10, 2004, which suggests that Mr. Dollinger spoke with Bernadette Arnold on December 9, 2004, and that the Dollinger Firm had sent a fax to Mr. Fierro. (*Id.* ¶ 10; *see also* Attachment to Aug. 14, 2007 Letter to the Court.) A further search of telephone company records by the Firm reflects that two telephone calls were placed from the Firm to plaintiffs' telephone number in Atlanta, Georgia, one lasting 36 seconds, and another lasting ten minutes, twelve seconds. (Dollinger Affirmation ¶ 13.) Based upon these records, Mr. Dollinger concluded the following in his Affirmation: "I assume from these records that I called Michael Fierro and spoke with him for about ten minutes. But again, I have no recollection of ever having spoken to him. I kept no record of any conversation between myself, and Michael Fierro." (*Id.*) Mr. Dollinger emphasized, "I have not worked on, nor have I had any connection with this case except my appearance before Judge Bianco on August 7, 2007 to address the conflict-of-interest issue."

---

[1] The Court notes that both Mr. Dollinger and the Dollinger Firm have acted in good faith at all times in this litigation in attempting to provide to the Court any information or documentation in their possession that may be relevant to plaintiffs' motion for disqualification. Although Mr. Fierro claims that Mr. Dollinger has unnecessarily disclosed confidential communications to the Court, the Court finds the allegation to be without merit. Instead, Mr. Dollinger has been diligently acting as an officer of the Court in conducting a thorough search of the Firm's records and providing documentation to the Court that, in fact, helps Mr. Fierro's position by corroborating his contact with the Firm, which Mr. Dollinger does not independently recall. Although the phone record provides a very brief summary of the substance of Mr. Fierro's phone message, such disclosure to the Court in connection with the disqualification motion has not in any way prejudiced Mr. Fierro.

3

(*Id.* ¶ 17.) Instead, his partners, with the assistance of some associates, have performed all the legal work in this matter. (*Id.* ¶ 16.) Finally, Mr. Dollinger stated that the Firm did not make any record indicating either plaintiff as a potential client, did not open up a file as a result of the telephone contact, and never issued a bill in connection with any communications between Mr. Fierro and the Firm. (*Id.* ¶ 18.)

C. Procedural History

Plaintiffs acting *pro se* brought this action by a Summons and Complaint on September 25, 2006. Dollinger, Gonski, & Grossman was retained, through partner Floyd G. Grossman, Esq., to represent the defendants in this action. (Dollinger Affirmation ¶ 14.) On January 31, 2007, plaintiffs filed an amended complaint. On April 17, 2007, defendants moved to dismiss the complaint. In a letter filed July 17, 2007, Mr. Fierro notified the Court that he recently remembered that he had contacted Mr. Dollinger two years prior to bringing this lawsuit about the subject matter of this lawsuit. On September 17, 2007, plaintiffs moved to disqualify defense counsel.

II. DISCUSSION

A. Standard for Disqualification of Counsel

Disqualification is viewed "with disfavor in this circuit," *In re Bohack Corp.*, 607 F.2d 258, 263 (2d Cir. 1979), because it "impinges on parties' rights to employ the attorney of their choice." *U.S. Football League v. Nat'l Football League*, 605 F.Supp. 1448, 1452 (S.D.N.Y. 1985) (citation omitted). In particular, the Second Circuit has noted the "high standard of proof" required for disqualification motions because, among other things, they are "often interposed for tactical reasons, and that even when made in the best of faith, such motions inevitably cause delay." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983); *accord Gov't India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978).

Nevertheless, the disqualification of counsel "is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). A federal court's power to disqualify an attorney derives from its "inherent power to 'preserve the integrity of the adversary process,'" *Hempstead Video, Inc. v. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)), and "is only appropriate where allowing the representation to continue would pose a significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981) (internal quotation marks omitted). In exercising this power, courts look for "general guidance" to the American Bar Association ("ABA") and state disciplinary rules, although the Second Circuit has emphasized that "not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video, Inc.*, 409 F.3d at 132.[2] However, "any doubt is to be resolved in favor of disqualification."

---

[2] The Court also notes that Civil Rule 1.5(b)(5) of the Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York binds attorneys appearing before those courts to the New York State Lawyer's Code of Professional Responsibility. Local Civ. R. 1.5(b)(5); *see, e.g., United States v. Hammad*, 846 F.2d 854, 857-58 (2d Cir.1988); *Polycast Tech. Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y.1990) ("[I]n this Court federal law incorporates by reference the Code of Professional Responsibility.").

*See Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir. 1975); *see also Nichols v. Vill. Voice,* 99 Misc.2d 822, 826, 417 N.Y.S.2d 415 (N.Y. 1979).

### B. Grounds for Disqualification

Plaintiffs argue that the Dollinger Firm should be disqualified because, almost two years before bringing this action, plaintiff Michael Fierro had preliminary discussions with the Firm regarding his claims and potential representation in this matter. Specifically, plaintiffs contend that the Firm's continued representation of the defendants would violate New York Code of Professional Responsibility, Disciplinary Rule 4-101(B) and Disciplinary Rule 5-108.

Defendants argue that the motion to disqualify the Dollinger Firm should be denied because of the following: (1) there was never an attorney-client relationship established between the Mr. Dollinger or the Firm and Mr. Fierro; (2) there was no indication that there were any "secrets" or "confidences" discussed during the conversations between Mr. Dollinger and Mr. Fierro; and (3) even if such secrets or confidences were discussed, Mr. Dollinger has no recollection of any such conversations. Thus, defendants contend that there is no conflict of interest in continuing to represent the defendants in this lawsuit.

As set forth below, the Court concludes that plaintiffs have made a sufficient showing to warrant disqualification of the Dollinger Firm. Fierro's statement in his affidavit – that he consulted with Mr. Dollinger in late 2004 regarding the subject matter of this case, including potential claims, potential defenses, and relevant case law – is corroborated by a phone message and phone records maintained by the Firm. Thus, this preliminary discussion regarding the subject matter of this litigation fell within the umbrella of an attorney-client relationship and was privileged. This prior consultation with Mr. Fierro regarding the exact subject matter of this litigation is sufficient to warrant disqualification. Although Mr. Dollinger does not recall any client confidences revealed to him during the conversation, his failure to recall such conversations does not vitiate the otherwise clear basis for disqualification.

### a. Code of Professional Responsibility Disciplinary Rules 4-101(B) and 5-108(A)

The two key provisions of the New York Code of Professional Responsibility implicated by this motion are DR 4-101(B) and DR 5-108(A). Disciplinary Rule 4-101(B) provides, in relevant part, that "a lawyer shall not knowingly: (1) Reveal a confidence or secret of a client; [or] (2) Use a confidence or secret of a client to the disadvantage of that client." (McKinney Supp. 1991).

The Disciplinary Rules define a "confidence" as "information protected by the attorney-client privilege under applicable law" and a "secret" as "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." DR 4-101(A) (McKinney Supp. 1991). Although DR 4-101(A) generally only applies where an attorney-client relationship is present, courts have held that an "analogous fiduciary obligation may be implied in the absence of a attorney-client relationship." *Liu v. Real Estate Inv. Group, Inc.*, 771 F. Supp. 83

5

(S.D.N.Y. 1991) (internal citations omitted). As the court in *Liu* noted:

> It is clear that where an attorney receives confidential information from a person, who under the circumstances has a right to believe that the attorney, as an attorney, will respect such confidences, the law will enforce the obligation of confidences irrespective of the absence of a formal attorney client relationship.

*Id.* at 86 (quoting *Nichols,* 99 Misc.2d 822, 417 N.Y.S.2d at 418); *see also Rosman v. Shapiro,* 653 F. Supp. 1441, 1445 (S.D.N.Y. 1987); *Trinity Ambulance Serv., Inc. v. G & L Ambulance Servs., Inc.,* 578 F. Supp. 1280, 1283 (D. Conn. 1984).

Disciplinary Rule 5-108 analyzes the duties owed by an attorney to a former client. Specifically, Disciplinary Rule 5-108 provides that "[a] lawyer who has represented a client in a matter shall not, without the consent of the former client after full disclosure . . . .[t]hereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client . . . ." DR 5-108 (McKinney Supp. 1991). Further, an individual lawyer's conflicts are ordinarily imputed to his firm based on the presumption that "associated attorneys share client confidences." *Hempstead Video, Inc.*, 409 F.3d at 133 (internal citations omitted); *see also* 22 N.Y.C.R.R. § 1200.27(b); *Kasis v. Teacher's Ins. and Annuity Ass'n,* 93 N.Y.2d 611, 616, 695 N.Y.S.2d 515, 717 N.E.2d 674 (N.Y.1999) ("[W]here an attorney working in a law firm is disqualified from undertaking a subsequent representation opposing a former client, all the attorneys in that firm are likewise precluded from such representation."). The Second Circuit has held that an attorney may be disqualified under Disciplinary Rule 5-108 if:

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Hempstead Video*, 409 F.3d at 133. As set forth below, under this standard, the Court finds in its discretion that disqualification is warranted because (1) plaintiffs have established that an attorney-client relationship existed as to Mr. Fierro's preliminary discussions, (2) the matters are not just "substantially related" to this litigation, but are indeed identical, and (3) it is likely that confidential and privileged information relevant to this lawsuit was shared with Mr. Dollinger during these conversations.

The first prong of this test requires an attorney-client relationship between the movant and the law firm sought to be disqualified. Although defendants point to the several factors in arguing there was no attorney client relationship – including the fact that the preliminary conversations were brief, the Dollinger Firm never opened a file related to Mr. Fierro, and the Dollinger Firm never charged any legal fees for the initial consultation – none of those factors, individually or collectively, is necessarily

dispositive in analyzing whether there was an attorney-client relationship. *See, e.g., United States v. Devery,* No. 93 Cr. 273 (LAP), 1995 WL 217529, at *14 (S.D.N.Y. Apr. 12, 1995) ("It is well-established that no formal indicia or technical requirements are required in order to establish an attorney-client relationship."); *Green v. Montgomery County,* 784 F. Supp. 841, 844 (M.D. Ala. 1992) ("The mere existence of an express contract of employment, or the payment of legal fees, or the length of consultation is not determinative of whether a preliminary consultation has matured into an attorney-client relationship.").

"[C]ourts have not employed a single, well-defined test for determining whether an attorney client relationship exists, and, moreover, have consistently rejected the argument that indicia of a formal relationship are necessary. Most courts have acknowledged, as a general matter, that an attorney-client relationship exists if the party divulging confidences and secrets to an attorney believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice." *First Hawaiian Bank v. Russell & Volkening, Inc.,* 861 F. Supp. 233, 238 (S.D.N.Y. 1994); *accord Bennet Silvershein Assocs. v. Furman,* 776 F. Supp. 800, 803 (S.D.N.Y. 1981) (quoting *Trinity Ambulance Serv., Inc. v. G & L Ambulance Servs., Inc.,* 578 F. Supp. at 1283); *Keoseian v. Von Kaulbach,* 707 F. Supp. 150, 152 (S.D.N.Y. 1989) (same). As the Second Circuit has stated, "[t]he key, of course, to whether an attorney/client relationship existed is the intent of the client and whether he reasonably understood the conference to be confidential." *United States v. Dennis,* 843 F.2d 652, 657 (2d Cir. 1998).

Further, whether or not employment occurs, preliminary discussions between an attorney and a prospective client are subject to the attorney client privilege. *See Dennis,* 843 F.2d at 657 ("To be sure, initial statements made while Pilgrim intended to employ Gerace were privileged even though the employment was not accepted."); *see also Green,* 784 F. Supp. at 845 ("[T]he fiduciary relationship existing between a lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer although actual employment did not result.") (quotations and citations omitted); *Liu,* 771 F.Supp. at 86 ("[T]he duty to preserve confidentiality extends to preliminary consultation by a prospective client even though actual employment does not result."); McCormick on Evidence 6th Ed. § 88 (West Publishing Co., 2006) ( "[C]ommunications in the course of [a] preliminary discussion with a view to employing the lawyer are privileged though the employment is in the upshot not accepted.").

In this instance, it is clear from Mr. Fierro's affidavit – and the corroboration contained in the phone message – that Mr. Fierro engaged Mr. Dollinger in preliminary discussions related to a legal analysis of the potential claims that could be brought in connection with the alleged fraudulent conduct by defendants during the purchase of plaintiff's Residence. Although Mr. Fierro decided not to retain Mr. Dollinger, any communication made during this preliminary consultation is protected by the duty of confidentiality and protected by the attorney-client privilege. Thus, this preliminary conversation is sufficient to establish the existence of an attorney-client relationship, even though the Dollinger Firm was not ultimately retained.

7

The next prong of the test requires that there be a "substantial relationship" between the issue in the pending case and those in the prior representation. "The substantial relationship test does not depend on the amount of work performed or the duration of the representation, but on the similarity of the issues in the former and current represetantions." *Arifi v. De Transport Du Cocher, Inc.,* 290 F. Supp. 2d 344, 349 (E.D.N.Y. 2003). In this case, the issues are identical. Therefore, the substantial relationship element is met.

The final requirement under the test articulated in *Hempstead Video* is that "the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." *Hempstead Video*, 409 F.3d at 133. In finding that there was a substantial relationship between Mr. Fierro's preliminary consultation and the current litigation, a rebuttable presumption is created that Mr. Fierro imparted to Mr. Dollinger confidential information relevant to the present litigation. *See Arifi*, 290 F. Supp. 2d at 350. A party moving to disqualify opposing counsel "is not required to prove that [opposing counsel] had access to confidential information while representing the [moving party] but only that he was *likely* to have had such access." *Id.*

As noted *supra*, Mr. Ferro's statement in his affidavit that "confidences" and "secrets" were shared with Mr. Dollinger is corroborated by the Firm's records. Specifically, there are telephone records indicating that there were at least two telephone calls on December 14, 2004 between Mr. Dollinger and Mr. Fierro, one of which lasted over ten minutes. Additionally, a message left with Mr. Dollinger's assistant on that date establishes that Mr. Fierro called Mr. Dollinger, Mr. Dollinger spoke with Ms. Arnold (Mr. Fierro's real estate attorney), that a fax from Mr. Dollinger was transmitted and reviewed by Mr. Fierro, and that Mr. Fierro wanted to proceed with his claim. The message provides sufficent circumstantial evidence to conclude that it is likely that some "confidences" or "secrets" were revealed to Mr. Dollinger in order for him to evaluate the case.

Although Mr. Dollinger states that he has no recollection of any conversation with Mr. Fierro or Ms. Arnold, his failure to recall the conversation does not change the analysis. For example, in *Arifi,* the court held that the former attorney's assertion, that he could not remember any confidential information conveyed to him during the short representation of one of the defendants, did not cure the professional responsibility conflicts which were present. *Arifi,* 290 F. Supp. 2d at 350 ("While there is no reason to doubt Green's claim that he does not remember any confidential information, the Court nevertheless finds that he was likely to have had *access* to such information during the short representation."); *see also Schwed v. Gen. Elec. Co.,* 990 F. Supp. 113, 117 n.2 (N.D.N.Y. 1998) (holding in a case where attorney claimed he did not possess confidential information and did not recall any discussions regarding the case, that the third prong of the Second Circuit test was nevertheless met because there was a likelihood that attorney had access to confidential information.) This Court agress with the analysis in those cases and finds that Mr. Dollinger's lack of recollection does not negate the fact that Mr. Dollinger likely had access to "confidences" or "secrets" during

Mr. Fierro's preliminary discussions and, thus, the third prong has been met.

In sum, the Court finds that all of the requirements of the *Hempstead Video* test have been met and that disqualification is warranted.[3] In reaching this decision, the Court recognizes that the defendants have already moved to dismiss the lawsuit because they argue that it must fail as a matter of law.

Defendants argue that the motion to disqualify should be held in abeyance until after the defendants' motion to dismiss is decided.[4] However, the Court believes such an approach under the circumstances presented here is ill-advised. Although that motion to dismiss is fully briefed, the Court is going to hear oral argument on that motion and believes that this disqualification issue should be resolved prior to having oral argument and addressing the motion to dismiss.[5] As the court stated in *Mitchell v. Metropolitan Life Insurance Co., Inc.,*

> Client confidences are not so inert as to limit their usefulness to defined legal disciplines or practice areas. They are fungible, and once disclosed can be applied by an experienced lawyer in ways too numerous to anticipate at this stage of the proceeding. As the Second Circuit observed, "[t]he dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical

---

[3] Plaintiffs further contend that the Firm's representation of defendants in this matter would violate Canon 9 of the Code of Professional Responsibility. Canon 9 of the Code states that "[a] lawyer should avoid even the appearance of professional impropriety." This requirement "reflects the bar's concern that some conduct which is in fact ethical may appear to the layman as unethical and thereby erode public confidence in the judicial system and the legal profession." *Liu*, 771 F. Supp. at 87 (S.D.N.Y. 1991). A motion to disqualify under Canon 9 should only be granted under circumstances in which the facts present a real risk that the trial will be tainted. *See Nyquist*, 590 F.2d at 1246; *accord United States Football League,* 605 F. Supp. at 1452. Although the Court has already concluded that disqualification is warranted under the *Hempstead Video* test, the Court also finds that disqualification is warranted under Canon 9. In the present case, defendants' counsel was consulted by the plaintiffs, but then was retained by the defendants. Such facts raise the specter that this litigation could be tainted. *See Liu,* 771 F. Supp. at 87 ("Although this is not strictly a successive representation problem because R & D simultaneously consulted with plaintiffs and [defendant] simultaneously, the second situation is not implicated here. R & D's initial involvement with parties having adverse postures in this litigation raises significant risks that the trial will be tainted or will appear to be tainted to the laymen."). For the reasons stated above, the risk of the litigation being tainted, or appearing to be tainted, is real.

[4] As a threshold matter, the Court notes that this argument is inconsistent with the position taken by counsel for the defendants at the August 7, 2007 pre-motion conference at which both sides agreed that the Court should decide the disqualification issue before addressing the motion to dismiss. In any event, as set forth *infra*, the Court declines to follow the approach suggested by the defendants

[5] The Court also notes that, even assuming *arguendo* defendants are successful in their motion, the Court would generally provide plaintiffs with an opportunity to replead to attempt to cure any pleading defects, which could then lead to another round of motion practice.

9

propriety of a lawyer's representation in a given case."

No. 01 CIV. 2112 (WHP), 2002 WL 441194, at *8 (S.D.N.Y. Mar. 21, 2002) (quoting *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973). Given the circumstances, and the fact that Mr. Dollinger's conflict is imputed to the Firm, the Court will not allow the Dollinger Firm to continue the representation even for purposes of a motion to dismiss.

### C. Undue Delay

Defendants also contend that plaintiffs' delay in bringing this motion is evidence that they are using disqualification as litigation tactic and, therefore, disqualification should be barred. Defense counsel cites to *Abel v. Morabito,* No. 04 Civ. 7284 (SCR)(MDF), 2005 WL 2452906, at *1 (S.D.N.Y. Oct. 3, 2005) for the proposition that a negative inference should be drawn from delay. In *Abel*, the court had set a discovery schedule five months prior to when the motion for disqualification was filed. *Id.* At the time of the motion for disqualification, various discovery disputes were ruled on and a deposition schedule was about to be set. *Id.* However, the court in *Abel* specifically stated "[d]elay in bringing an application to disqualify counsel, whether tactical or inadvertent, cannot defeat the motion because the basis for disqualification, if it exists, would be a breach of the Code of Professional Responsibility, a matter which implicates the public interest." *Id.* at *1 (internal citations omitted). Thus, undue delay was not a factor in the court's analysis and decision to deny the motion.

In the instant case, the Court does not believe there is any basis to conclude that plaintiffs intentionally delayed bringing this motion. First, the Court has no reason to doubt Mr. Fierro's representation that he did not immediately realize that the Dollinger Firm is the same firm that he had engaged in these preliminary discussions several years ago. Moreover, Mr. Fierro has gained no tactical advantage by not raising this issue as soon as the Dollinger Firm appeared in the action. The case was filed in September 2006, discovery has not begun, and defendants have suffered no material prejudice from any alleged delay. *See, e.g., Talvy v. Am. Red Cross in Greater N.Y.,* 205 A.D.2d 143, 618 N.Y.S.2d 25 (1st Dept. 1994) (disqualification motion made three years had elapsed), *aff'd,* 87 N.Y.2d 826, 661 N.E.2d 159, 637 N.Y.S.2d 687; *Potters v. 71st Street Lexington Corp.*, 8 A.D.3d 198, 779 N.Y.S.2d 473 (1st Dept. 2004) (disqualification motion made on eve of trial). Thus, the Court does not conclude there was undue delay or prejudice to the defendants from the timing of the motion. Moreover, although defendents will need to retain new counsel, that counsel will not necessarily need to duplicate the work product of the Dollinger Firm. Specifically, new counsel could adopt the motion papers already filed by the Dollinger Firm or, if necessary, the Court will allow supplemental briefing before oral argument.

### III. CONCLUSION

For the foregoing reasons, plaintiffs' motion to disqualify Dollinger, Gonski and Grossman is GRANTED. Defendants will have 30 days to obtain new counsel and have that counsel file a notice of appearance in this action. Following the filing of a notice of appearance, the Court will schedule a telephone conference to discuss how it intends to proceed with respect to the motion to dismiss.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 4, 2007
Central Islip, New York

\* \* \*

The attorneys for plaintiffs pro-se are Michael & Christine Fierro, 5148 Vinings Estates Way, Mableton, GA 30126. The attorneys for defendants are Floyd G. Grossman and Michael J. Spithogiannis of Dollinger, Gonski & Grossman, One Old Country Road, Suite 102, Carle Place, NY 11514.