UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 06-CV-5189 (JFB) (WDW)
_____

MICHAEL FIERRO AND CHRISTINE FIERRO,

Plaintiffs,

VERSUS

THOMAS GALLUCCI AND FLORENCE GALLUCCI,

AND

VILLA POINTE LLC, JAMES NICOTRA AND ANN MARIE NICOTRA

Defendants.

_____

MEMORANDUM AND ORDER
May 12, 2008
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs Michael and Christine Fierro (collectively, "plaintiffs") brought this action against Thomas and Florence Gallucci (hereinafter, the "Gallucci Defendants"), Villa Pointe LLC, and James and Ann Marie Nicotra (hereinafter, the "Nicotra Defendants") (collectively, "defendants"), in connection with the 2004 sale of plaintiffs' home in Rockville Centre, New York, to the Gallucci Defendants. Plaintiffs contend that the defendants committed fraud by making false and misleading statements to plaintiffs in order to induce plaintiffs to enter into a contract of sale for their home and to induce them into consenting to the Gallucci Defendants' subsequent assignment of the contract to Villa Pointe LLC. Plaintiffs assert that the Gallucci Defendants' subsequent demolition of the home (with the assistance of the Nicotra Defendants) and development of the property constitute, among other things, fraud, fraudulent inducement, and breach of contract. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. As set forth below, the motion to dismiss is granted in part and denied in part.

## I. BACKGROUND

### A. Facts

This case involves the plaintiffs' sale of their residence at 327 Lakeview Avenue in Rockville Centre, New York (hereinafter, the "Residence"), to the Gallucci Defendants. The following facts are taken from the Amended Complaint and are not findings of fact by the court. The Court assumes these facts to be true for the purpose of deciding this motion and construes them in the light most favorable to plaintiffs, the non-moving parties.

According to the Amended Complaint, plaintiffs were introduced to the Gallucci Defendants by James and Ann-Marie Nicotra, who reside immediately adjacent to the Residence. (Am. Compl. ¶ 8.) The Amended Complaint alleges that the Gallucci Defendants, the Nicotra Defendants, and an LLC created by the Gallucci Defendants – namely, Villa Pointe LLC – "were partners in a scheme to con the Plaintiffs into selling the Gallucci Defendants their Home, and to then tear it down and develop the property with new homes." (*Id.* ¶ 9.) Specifically, it is alleged that the Gallucci Defendants fraudulently concealed their intention to tear down the home and develop the property. (*Id.* ¶ 11.) For example, the Amended Complaint alleges the following misrepresentations took place regarding the sale of the home:

> During such discussions [about the sale of the home], Defendants made fraudulent statements to Plaintiffs designed to convince Plaintiffs to sell their Home to the Defendants. Among other things, Plaintiffs and Gallucci Defendants discussed Gallucci Defendants' reasons for wanting to purchase the Home. Gallucci Defendants lied about their true intentions with the Home. Prior to entering into the contract of sale, Plaintiffs expressed to both the Gallucci Defendants and Nicotra Defendants their desire to find a family that would give their house a good "home". During these conversations, Defendants never disclosed their plans to tear down Plaintiffs' home, or to develop the property.

(*Id.* at ¶ 11.) The Amended Complaint further alleges that the defendants knew that plaintiffs had received offers to purchase the Residence that were higher than the Gallucci Defendants' offer, but accepted the Gallucci Defendants' offer because, among other things, they "gave the impression that they were going to be a good family to the Home." (*Id.* at ¶¶ 15-18.)

Moreover, the Amended Complaint alleges that, less than one week prior to the consummation of the contract of sale in August 2004, the Gallucci Defendants informed plaintiffs that they wished to have the right to purchase the home under the contract of sale transferred to Villa Pointe LLC. (*Id.* ¶ 19.) According to the Amended Complaint, prior to agreeing to this assignment of rights to the LLC, plaintiffs explicitly asked the Gallucci Defendants whether they intended to tear down the Residence and the Gallucci Defendants expressly denied any current intention to tear down the home. (*Id.* ¶¶ 23-24.) The Amended Complaint further alleges that, within one month after the closing on the Residence, the Gallucci Defendants had arranged for the property to be re-zoned for two homes and, shortly thereafter, had the

2

Residence destroyed. (*Id.* ¶¶ 28-29.) Plaintiffs allege that, pursuant to a partnership with the Nicotra Defendants, the Gallucci Defendants (through the Villa Pointe LLC) built two new residences in place of the Residence which sold for approximately $1,300,000 each. (*Id.* ¶¶ 30-31.)

Plaintiffs allege, among other things, that the Gallucci Defendants and Nicotra Defendants made false and misleading statements prior to the signing of the contract of sale in order to fraudulently induce them to enter into the contract of sale for the purchase of the Residence. (*Id.* ¶¶ 35,45.) Moreover, plaintiffs allege that the "Gallucci Defendants made false and misleading statements to the Plaintiffs in order to induce Plaintiffs to allow Gallucci Defendants to assign any rights Gallucci Defendants had to purchase the home under the contract of sale to the LLC." (*Id.* ¶ 51.) Plaintiffs further assert that "[d]efendants knew, through conversations with Plaintiffs and through conversations with the Nicotra Defendants, that Plaintiffs had a strong sentimental attachment to the Home, and would not have sold the Home to the Gallucci Defendants had Plaintiffs known of Defendants' intentions to tear the Home down and put up 'McMansions' in its place." (*Id.* ¶ 51.) In short, plaintiffs contend that "had the Plaintiff known about Defendants' plan to tear down their Home, and had it not been for Defendants' false and misleading statements to Plaintiffs, Plaintiffs would have never sold the Home to Gallucci Defendants, nor would they have agreed to the assignment for the contract of sale to the LLC or the waiver of the rights under the contract of sale." (*Id.* ¶ 32.)

B. Procedural History

Plaintiffs acting *pro se* brought this diversity action on September 25, 2006, alleging fraud, fraud in the inducement, and breach of contract claims. Dollinger, Gonski, & Grossman was retained, through partner Floyd G. Grossman, Esq., to represent the defendants in this action. (Dollinger Affirmation ¶ 14.) On January 31, 2007, plaintiffs filed an Amended Complaint. On March 2, 2007, defendants moved to dismiss the Amended Complaint. Plaintiffs filed a response on April 17, 2007 and defendants filed a reply on May 7, 2007.

In a letter filed July 17, 2007, Michael Fierro notified the Court that he recently remembered that he had contacted Mr. Dollinger two years prior to bringing this lawsuit about the subject matter of this lawsuit. On September 17, 2007, plaintiffs moved to disqualify defense counsel. The Court granted the motion for disqualification on December 4, 2007. Defendants then retained J. Edward Gathman Jr., Esq., of Gathman & Bennett, LLP, as counsel. Mr. Gathman filed a notice of appearance with the Court on January 3, 2008. Defendants filed a supplemental motion to dismiss on February 4, 2008. Plaintiffs filed a reply to defendants' supplemental motion on February 11, 2008. Oral argument was held on April 11, 2008.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir.

3

2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). Therefore, the Court ordinarily does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.*

However, claims concerning fraud are subject to heightened pleading standards pursuant to Fed. R. Civ. P. 9(b). Specifically, Federal Rule of Civil Procedure 9(b) requires the following:

> In allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). Thus, fraud allegations in a complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bankcorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *accord Knoll v. Schectman,* No. 06-1832-CV, 2008 WL 1868440, at *1 (2d Cir. Apr. 25, 2008); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). Conclusory allegations of fraud will be dismissed under Rule 9(b). *See Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971). Moreover, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

Finally, as the plaintiffs are appearing *pro se*, the Court shall "'construe [their complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)).[1]

---

[1] Further, in reviewing a motion to dismiss, "the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Here, defendants ask the Court to consider for purposes of this motion several exhibits appended to their motion papers, including the Residential contract of sale, an affidavit by the defendants' attorney regarding the drafting of the contract, and a letter from plaintiffs' real estate attorney. (*See* Defs.' Supp. Br., Certification Regarding Exhibits.) However, "a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact." *Roth*, 489 F.3d at 509. Short of converting this motion to a motion for summary judgment under Fed.R.Civ.P. 56, which would be premature in this case given the lack of discovery, the Court may only consider a document not appended to the complaint if the document is "incorporated in [the complaint] by reference" or is a document "'upon which [the complaint] solely relies and . . . is integral to the complaint.'" *Id.* (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)) (emphases omitted). Courts also "'routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings.'" *Crews v. County of Nassau*, No. 06-CV-2610 (JFB), 2007 U.S. Dist. LEXIS 6572, at *5 n.2 (E.D.N.Y. Jan. 30, 2007) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991)).

4

III. DISCUSSION

A. New York Law

In exercising its diversity jurisdiction, the Court must "apply the substantive law of the state to which the forum state, New York, would have turned had the suit been filed in state court." *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 280 (2d Cir. 1981) (citations omitted). Because the plaintiffs were from New York at the time of the transaction negotiations, defendants are from New York, and the transaction at issue took place in New York, this Court properly applies New York law. *See Clarkson Co. Ltd. v. Shaheen*, 660 F.2d 506, 512 n.4 (2d Cir. 1981).

A claim under breach of contract is distinct from one under fraudulent inducement. "[A]s a general matter, a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) (citations omitted). Thus, "general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud] claim." *Id.* (quoting *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (N.Y. 1995)). The law in New York is clear that "a plaintiff may not circumvent the Statute of Frauds . . . by simply recasting his claim for breach of contract as an action for fraud." *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 294 (2d Cir. 1986) (internal quotation marks omitted).

However, New York specifically recognizes causes of action for fraud in the inducement when the misrepresentation is collateral to the contract it induced. *See WIT Holding Corp. v. Klein*, 282 A.D.2d 527, 528 (N.Y. App. Div. 2001) ("[A] misrepresentation of material fact, which is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud."). New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement. *See Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007) (citing *Stewart v. Jackson & Nash*, 976 F.2d 86, 88-89 (2d Cir. 1992)).

As set forth below, the Court analyzes separately the breach of contract claim and the claims for fraudulent inducement under New York law and, as discussed *infra*, finds that the breach of contract claim and the fraud claims against the Nicotra Defendants do not survive a motion to dismiss, but the other claims, including the fraudulent inducement claims against the Gallucci Defendants and Villa Pointe LLC, are sufficiently alleged to withstand defendants' motion to dismiss.

---

Here, the contract of sale is incorporated by reference in the Amended Complaint and can properly be considered by the Court. However, with respect to the other documents attached to defendants' supplemental papers, defendants do not argue– and the Court does not conclude – that such exhibits fall within these exceptions. Consequently, the Court will not consider such exhibits for the purposes of this motion.

5

### 1. Breach of Contract Claim

Plaintiff alleges that the Gallucci Defendants breached their contract for the sale of the Residence. In particular, it is alleged that the Gallucci Defendants breached the contract by failing to include a material fact in the contract of sale – namely, their alleged plan to tear down the Home and develop the property.[2] For the reasons set forth below, the breach of contract claim cannot survive a motion to dismiss.

To establish a breach of contract claim under New York law, a plaintiff must prove: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). The parties do not dispute the existence of a contract of sale and that plaintiffs performed in accordance with said contract. The issue before the Court deals with defendants' alleged breach.

The law in New York is clear, and the parties do not dispute, that a contract for the sale of land falls directly under the Statute of Frauds. *See* N.Y.G.O.L. § 5-703. Under N.Y. General Obligations Law (N.Y.G.O.L.) § 5-703(2),

> [a] contract . . . for the sale, of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, *is in writing* . . . .

N.Y.G.O.L. § 5-703(2) (emphasis added). In *Adams v. Gillig*, the New York Court of Appeals held that promises of future action that are part of the contract between parties must be stated in the contract in order for those promises to be binding. *Adams v. Gillig*, 199 N.Y. 314, 318 (1910) (hereinafter, "*Gillig*"). More specifically, the court found that

> [a]n oral restrictive covenant, or any oral promise to do or refrain from doing something affecting the property about which a written contract is made and executed between the parties, will not be enforced, not because the parties should not fulfill their promises and their legal and moral obligations, but because the covenants and agreements being promissory and contractual in their nature and a part of, or collateral to, a principal contract, the entire agreement between the parties must be deemed to have been merged in the writing.

*Id.*

In the instant case, it is clear that the written contract for the sale of the Residence

---

[2] As a threshold matter, the Court notes that, as discussed *infra*, plaintiffs' allegations in this case involve misstatements and omissions of present facts, not contractual promises regarding prospective performance. "[A] misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty." *First Bank of the Ams. v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 292 (N.Y. App. Div. 1999); *see also Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (N.Y. 1986). Accordingly, whether the Gallucci Defendants allegedly misrepresented such statements would be an issue for a fraudulent inducement claim, as discussed *infra*, and not a breach of contract claim. However, for the reasons outlined below, plaintiff's breach of contract claim fails regardless.

did not include any language dealing with a restrictive covenant. In fact, plaintiffs argue that they are alleging the breach of contract claim because "[t]he Gallucci Defendants *failed to include* a material fact in the contract of sale (i.e., their plan to tear down the Home and develop the property)." (Am. Compl. ¶ 42) (emphasis added). Even taking all of plaintiffs' allegations as true, the breach of contract claim must fail as a matter of law. There are no allegations that any agreement existed between the parties that specifically prohibited defendants from knocking down the Residence. Any such prohibitions are required to be in writing pursuant to the Statute of Frauds.

Plaintiffs argue that they relied on defendants' oral representations about their intent to live in the house in deciding to sell defendants the Residence. This argument fails under a breach of contract claim for two reasons. First, as stated above, any agreements dealing with restrictive covenants must be in writing. To the extent plaintiffs are arguing that a contractual oral agreement to refrain from knocking the house down was formed by the parties, that agreement would not be valid unless it is in writing under New York law and the Statute of Frauds. Second, even assuming *arguendo* that the oral representations could be admitted, defendants' representations to plaintiffs do not amount to a promise that binds the parties contractually. To the contrary, plaintiffs allege that defendants never "promised" not to knock the house down. According to plaintiffs, "[t]he plaintiffs did not ask the defendants to promise not to tear down the house." (Pls.' Opp. Br., at 12.) Plaintiffs instead argue that the statements in dispute are misrepresentations, not promises. (*Id.* at 10-11.) As mentioned above and discussed *infra*, misrepresentations are relevant to claims of fraudulent inducement, not breach of contract.

Plaintiffs also appear to argue that the oral statements should be introduced to show the true intent of the housing contract. The Court disagrees. The alleged oral statements are barred by the parol evidence rule. The Second Circuit has stated the parol evidence rule as follows:

> When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1988); *see also Sabo v. Delman*, 3 N.Y.2d 155, 161 (N.Y. 1957) ("The parol evidence rule forbids proof of extrinsic evidence to contradict or vary the terms of a written instrument and, accordingly, one who seeks, in a breach of contract action, to enforce an oral representation or promise relating to the subject matter of the contract cannot succeed.") (emphasis omitted). However, if a writing is not integrated, parol evidence of additional contract terms may be admitted to complete the agreement, so long as the additional terms do not contradict the written terms. *Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F. Supp. 347, 352 (S.D.N.Y. 1996). Where the operative agreement contains an express integration, or merger clause, the Second Circuit has found such agreements to be fully integrated. *See Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 295 (2d Cir. 1999).

In the instant case, the operative agreement contains an integration clause, thereby making such a contract fully integrated.[3] Thus, any oral representations between the parties in this case cannot sustain a breach of contract claim. In fact, New York law requires such restrictive covenants to be in writing precisely to prevent the sorts of breach of contract issues present here. Accordingly, the Court grants defendants' motion to dismiss the breach of contract claim.

2. Fraudulent Inducement

Plaintiffs also allege that all defendants fraudulently misled plaintiffs into selling the Gallucci Defendants the Residence and assigning the contract of sale to Villa Pointe LLC. In moving to dismiss the fraudulent inducement claims, defendants argue the following: (1) no fraudulent inducement claim can exist as a matter of law with respect to statements to the seller by a buyer as to his or her intentions concerning the future use of land sold under a contract; (2) the allegations in the instant case are insufficiently pled to sustain any fraudulent inducement claim; and (3) any fraudulent inducement claim is precluded here because of the merger clause in the contract of sale. As discussed in detail below, the Court finds the fraudulent inducement claims against the Gallucci Defendants and Villa Pointe LLC survive a motion to dismiss, but the claims against the Nicotra Defendants are too conclusory and must be dismissed. The Court will address each group of defendants separately.

---

[3] Other factors New York courts consider in deciding whether a contract is integrated include:

> whether the document in question refers to the oral agreement, or whether the alleged oral agreement between the parties is the sort of complex arrangement which is customarily reduced to writing; whether the parties were represented by experienced counsel when they entered into the agreement; whether the parties and their counsel negotiated during a lengthy period, resulting in a specially drawn out and executed agreement, and whether the condition at issue is fundamental; if the contract, which does not include the standard integration clause, nonetheless contains wording like "in consideration of the mutual promises herein contained, it is agreed and covenanted as follows," and ends by stating that "the foregoing correctly sets forth your understanding of our Agreement."

*Arias-Zeballos v. Tan*, No. 06 CIV. 1268 (GEL), 2006 WL 3075528, at *7-*8 (S.D.N.Y. Oct. 26, 2006) (citing *Morgan Stanley High Yield Sec., Inc. v. Seven Circle Gaming Corp.*, 269 F. Supp. 2d 206, 214 (S.D.N.Y. 2003)). Generally, courts determine whether or not an agreement is integrated based on these factors at the summary judgment stage. *See Adler & Shaykin v. Wachner*, 721 F. Supp. 472, 477 (S.D.N.Y. 1988); *Wilson-Gray v. Jay Feinberg Ltd.*, No. 90 Civ. 0001 (MBM), 1990 WL 209635, at *2-*4 (S.D.N.Y. Dec. 17, 1990); *Namad v. Salomon, Inc.*, 147 A.D.2d 385, 387 (N.Y. 1989). However, since the contract clearly contains an integration clause, as discussed *infra*, the Court need not address these factors and can determine as a matter of law at this stage that the contract was fully integrated.

a. Gallucci Defendants and Villa Pointe LLC

Plaintiffs allege that the plaintiffs relied upon the Gallucci Defendants' denial of any current intention to tear down the Residence in deciding to sell the Residence to the Gallucci Defendants and in executing the assignment of rights. The Gallucci Defendants make a number of arguments in support of their motion, including that plaintiffs cannot demonstrate that defendants made fraudulent representations with the intent to deceive the plaintiffs, and upon which the plaintiffs reasonably relied.

Under New York case law,

> [a]ny statement of an existing fact material to the person to whom it is made that is false and known by the person making it to be false and which is made to induce the execution of a contract, and which does induce the contract, constitutes a fraud that will sustain an action to avoid the contract if the person making it is injured thereby.

*Gillig*, 199 N.Y. at 319. Thus, in order to state a claim for fraud under New York law, a plaintiff is required to allege the following five elements: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006); *see also Cohen v. Houseconnect Realty Corp.*, 289 A.D.2d 277, 278 (N.Y. App. Div. 2001).

As outlined below, the Court finds that plaintiffs have adequately satisfied the pleading requirements for a claim of fraudulent inducement and there is no basis to dismiss the claim at the motion to dismiss stage.

(i) Misrepresentations about Current Intention Regarding Future Use of Land

To the extent that defendants suggest that an alleged misrepresentation regarding an intention for the future use of the land can never form the basis of a fraudulent inducement claim, the Court disagrees.

New York courts have held that "a promise to take some future action which is collateral to the contract can be considered a 'misrepresentation' for purposes of a fraud in the inducement cause of action." *Wall*, 471 F.3d at 416; *see also Deerfield Commc'ns Corp.*, 68 N.Y.2d at 956 (holding that "a promise [not contained in the written agreement] made with a preconceived and undisclosed intention of not performing it . . . constitutes a misrepresentation" for purposes of a fraud in the inducement cause of action (quoting *Sabo*, 3 N.Y.2d at 160) (internal quotation marks omitted)).

In fact, in 1919, the New York Court of Appeals in *Gillig* faced a circumstance closely analogous to the allegations here and found that a cause of action for fraudulent inducement existed under New York law. Specifically, in *Gillig,* plaintiff claimed that the defendant fraudulent induced him to sell a portion of a vacant lot next to plaintiff's home by falsely stating that he wanted to build a dwelling on the land, when his real intention was to build a public automobile garage and, in fact, defendant entered into a contract for the construction of such garage within two weeks of the purchase of the land from

9

plaintiff. 199 N.Y. at 314. The Court of Appeals upheld the judgment for the plaintiff and explained how a fraudulent inducement claim could exist, even where a breach of contract claim could not, with respect to this type of oral representation:

> The simple question in this case is therefore whether the alleged intention of the defendant to build a dwelling or dwellings upon the lot which he sought to purchase is such a statement of an existing material fact as authorizes the court to cancel the deed because of the fraud. The distinction between a collateral agreement as a part of a contract to do or not to do a particular thing and a statement and representation of a material existing fact made to induce the contract may be further profitably considered. A promise as such to be enforceable must be based upon a consideration, and it must be put in such form as to be available under the rules relating to contracts and the admission of evidence relating thereto. It may include a present intention, but as it also relates to the future it can only be enforced as a promise under the general rules relating to contracts. A mere statement of intention is a different thing. It is not the basis of an action on contract. It may in good faith be changed without affecting the obligations of the parties. A statement of intention does not relate to a fact that has a corporal and physical existence, but to a material and existing fact, nevertheless not amounting to a promise, but which, as in the case under discussion, affects and determines important transactions. The question here under discussion is not affected by the rules relating to the admission of testimony. As it was not promissory and contractual in its nature, there is nothing in the rules of evidence to prevent oral proof of the representations made by the defendant to the plaintiff. In an action brought expressly upon a fraud, oral evidence of facts to show the fraud is admissible.

199 N.Y. at 319-20. The court also rejected the argument that any such oral misrepresentation could not be material because the intention could change immediately after the misrepresentation was made:

> The intent of Gillig was a material existing fact in this case, and the plaintiff's reliance upon such fact induced her to enter into a contract that she would not otherwise have entered into. The effect of such false statement by the defendant of his intention cannot be cast aside as immaterial simply because it was possible for him in good faith to have changed his mind or to have sold the property to another who might have a different purpose relating thereto. As the defendant's intention was subject to change in good faith, at any time, it was of uncertain value. It was, however, of some value. It was of sufficient value so that the plaintiff was willing to stand upon it and make the conveyance in reliance upon it. . . . A person in selling property may be quite willing to execute and deliver a deed thereof without putting restrictive covenants therein and in reliance upon the good faith of express, unqualified assurances of the

present intention of the prospective purchaser. In such case the intention is material, and the statement of such intention is the statement of an existing fact.

199 N.Y. at 321. The court then concluded that "the false statements made by the defendant of his intention should under the circumstances of this case be deemed to be a statement of a material, existing fact of which the court will lay hold for the purpose of defeating the wrong that would otherwise be consummated thereby." *Id.* at 322; *see also Pease & Elliman, Inc. v. Wegeman,* 223 A.D. 682, 684 (N.Y. App. Div. 1928) ("It is well settled that a declaration of a present intention, false when made, to perform an act in the future, constitutes a false representation of an existing fact.").

Defendants argue that allowing causes of action of the type asserted here is problematic from a policy statement because it creates potential uncertainty in the finality of real estate transactions. In particular, defendants contend that such causes of action will allow sellers or buyers to seek to undo a real estate transaction based on alleged oral misrepresentations on collateral issues. As a threshold matter, buyers and sellers can easily immunize themselves from any such issues by inserting a specific merger clause in the contract of sale, as discussed *infra*. More importantly, it is not the proper province of a federal court, sitting in diversity jurisdiction, to ignore well-settled New York law because of policy considerations; rather, this Court is bound to follow the pronouncement of New York State's highest court in *Gillig* in which it held that this type of cause of action is permissible under New York law. *See Belmac Hygiene, Inc. v. Belmac Corp.,* 121 F.3d 835, 840 (2d Cir. 1997) ("It is self-evident that the highest court of the state is the final arbiter of what is state law . . . and, of course, a federal court sitting in diversity must follow the law directed by the Supreme Court of the state whose law is found to be applicable.") (quotations and citations omitted). Although the *Gillig* case was decided almost 100 years ago, there are no subsequent New York Court of Appeals cases that have overruled it or called into doubt its holding and it has been cited with approval on a number of occasions since it was issued. *See, e.g., Sabo*, 3 N.Y.2d at 160 (citing *Gillig*); *Adams v. Clark,* 239 N.Y. 403, 409-410 (N.Y. 1925) (same); *Terris v. Cummiskey,* 11 A.D.2d 259, 260-61 (N.Y. App. Div. 1960) (citing *Gillig* and allowing action to recover for alleged fraud by defendant in inducing plaintiffs to enter into a contract to purchase a house which defendant represented would have a dry cellar); *see also Brown v. Lockwood,* 76 A.D.2d 721, 732 (N.Y. App. Div. 1980) (citing *Gillig*); *Gabriel v. Graham,* 168 A.D. 847, 849-50 (N.Y. App. Div. 1915) (same). In fact, in one case, the Appellate Division, First Department, quoted *Gillig* and specifically rejected the policy concern raised by defendants:

> We decide therefore that the first cause of action must be sustained since it sufficiently pleads a claim of fraudulent inducement. It should be noted that we are here dealing merely with a pleading and not proof. The fear, that holding sufficient a cause of action such as this, might lead to many false oral claims in connection with written contracts, was fully considered in the *Adams v. Gillig* case where the Court of Appeals said (pp. 322-323): "It is said that this decision will open the door to other litigation. If that is the effect of it, then, so far as the decision asserts power in the court to

prevent dishonesty, false dealing, and bad faith in business transactions, it should be welcomed. . . . The courts will be vigilant to prevent the rescission for fraud of a contract deliberately made unless the fraud is admitted or proven by most satisfactory evidence."

*Rosenwald v. Goldfein,* 3 A.D.2d 206, 209 (N.Y. App. Div. 1957). Therefore, this Court must follow *Gillig* and cannot dismiss this claim at the motion to dismiss stage.

Defendants also attempt to distinguish *Gillig* because the plaintiff in that case was an adjoining owner of a parcel of property that would be negatively affected by the representations made by the defendant, where defendant said he would be building a residential structure when, in fact, the defendant intended to build a commercial garage. Here, defendants argue that plaintiffs placed the property on the market for sale in an effort to move to Georgia (which, in fact, occurred after the sale) and, thus, were not negatively affected by defendants' use of the property after the sale. The Court finds this argument unpersuasive at the motion to dismiss stage. The Court recognizes that the fact that plaintiffs were planning to move from the area after selling the Residence (as alleged in the Amended Complaint), as well as the context of the discussions with the Gallucci Defendants regarding the defendants' intended future use for the property, could be critical in determining whether any misrepresentations were material and whether there was reasonable reliance on the part of the plaintiffs under the particular circumstances of this case. However, there is nothing in the analysis in *Gillig* to suggest that only adjacent landowners can bring a fraudulent inducement claim with respect to representations regarding an intended use of a piece of property. Here, as discussed *infra*, plaintiffs have alleged all the elements of a fraudulent inducement claim, including materiality and that they were economically damaged by the misrepresentation because they sold the Residence to the Gallucci Defendants at a lower price than plaintiffs could have otherwise obtained, and therefore the holding in *Gillig* precludes this claim being dismissed at the motion to dismiss stage.

(ii) Sufficiency of Pleading

The Gallucci Defendants also argue that, even if a fraudulent inducement claim could theoretically lie for a claim of this nature, the Amended Complaint fails to contain sufficient allegations to support such a claim. However, as set forth below, the Court disagrees and concludes that the allegations are sufficient to survive a motion to dismiss under Rules 9 and 12(b)(6).

In the instant case, plaintiffs' Amended Complaint clearly alleges that the Gallucci Defendants made a material false representation. Specifically, plaintiffs allege that the plaintiffs expressed to all defendants their desire to find a family that would give their house a good "home" (*id.* ¶ 11) and that the Gallucci Defendants allegedly gave the impression that they were going to be a good family to the Residence (*id.* ¶ 18). In addition, plaintiffs allege that, in order to induce them to sign the assignment of the rights that the Gallucci Defendants had to purchase the home to the LLC, the Gallucci Defendants *explicitly denied* any intention to tear down the Residence in response to a *specific question* by plaintiffs regarding their intention:

Prior to agreeing to the assignment of rights to the LLC, Plaintiffs asked Gallucci Defendants what their plans for their Home were, and whether they intended to tear the Home down. Gallucci Defendants denied any current intention to tear down the Home. In reliance on the false and misleading statements by the Defendants, Plaintiffs agreed to assign the contract for the sale to the LLC.

(Amended Complaint ¶¶ 23-25.) These allegations pertaining to the defendants' alleged denial of their intent to tear down the house, despite plaintiffs' questioning, is sufficient to survive a motion to dismiss.

The Court recognizes that the misrepresentation must also be collateral to the written agreement in order to be viable under New York law. *See Wall* 471 F.3d at 416. Here, plaintiffs allege that they entered into the contract of sale and the assignment in reliance on collateral statements from defendants that they would not knock the house down. The contract, by contrast, is silent regarding any agreements relating to the intent to develop the property. Looking at the allegations in a light most favorable to the plaintiffs, the oral statements made by defendants were sufficiently collateral to the terms of the contract to sustain a claim for fraud in the inducement under New York law. *See, e.g., Wall*, 471 F.3d at 416; *Deerfield*, 68 N.Y.2d at 956; *Hobart v. Schuler*, 55 N.Y.2d 1023, 1024 (N.Y. 1982). Accordingly, plaintiffs have sufficiently alleged collateral oral misrepresentations under New York law.

The complaint further alleges that defendants had the requisite knowledge and intent to deceive plaintiffs. Although the scienter requirement need not be plead with particularity, "[i]n order to avoid abuse . . . plaintiffs are required to allege facts that give rise to a strong inference of fraudulent intent." *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 663 (2d Cir. 1997) (finding the allegations to be insufficient to raise strong inference of fraudulent intent, where the allegations were ambiguous in nature and of suspect import); *see also Ouaknine v. MacFarlane*, 897 F.2d 75, 81 (2d Cir. 1990) (finding allegations of breach of contract sufficient to support scienter only where "[i]t is difficult to imagine how such events could have occurred if the defendants who controlled them had not actually intended to defraud"). The requisite "strong inference" of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Shields*, 25 F.3d at 1128.

Plaintiffs allege that the Gallucci Defendants knew that they were planning to knock down the house at the time of the misrepresentations, that they formed an LLC for that specific purpose prior to closing, and lied about their true intentions with the Residence. (Am. Compl. ¶ 14.) As noted above, according to the Amended Complaint, prior to the agreement to this assignment of rights to the LLC, plaintiffs asked the Gallucci Defendants whether they intended to tear down the Residence and the Gallucci Defendants denied any current intention to tear down the home. (*Id.* ¶¶ 23-24.) The Amended Complaint also alleges that, within one month after the closing on the Residence, the Gallucci Defendants filled in the backyard pool and arranged for the property to be re-zoned for two homes. (*Id.* ¶ 28.) The home was destroyed shortly after that. (*Id.* ¶ 29.)

13

Based upon these allegations, the Amended Complaint sufficiently alleges the requisite intent by the Gallucci Defendants.[4]

Finally, plaintiffs clearly allege that they relied upon and were damaged by the false representations. For instance, the complaint specifically states that,

> had the Plaintiff known about Defendants' plan to tear down the Home, and had it not been for Defendants' false and misleading statements to Plaintiffs, Plaintiffs would have never sold the Home to Gallucci Defendants, nor would they have agreed to the assignment for the contract of sale to the LLC or the wavier of the rights under the contract for sale.

(*Id.* ¶ 32.) With respect to damages, defendants argue that the damages allegation is not sufficiently plead because plaintiffs "got everything they bargained for." (Defs.' Br., at 15.) However, defendants do not cite to any case law, nor has the Court found any case, where courts have dismissed a fraudulent inducement claim for that reason. Plaintiffs clearly allege that, because defendants misrepresented their intent to knock down the house, plaintiffs suffered actual pecuniary losses by selling for an amount less than the market would otherwise have allowed. (Am. Compl. ¶ 39.) Even though defendants produce calculations in its motion papers to show that plaintiffs' allegations that defendants "failed to show up at the closing with enough money" was false, that is not an issue for the Court to decide on a motion to dismiss – plaintiffs have adequately stated reliance and damages resulting from defendants' alleged misrepresentations.

In sum, the Amended Complaint alleges that the Gallucci Defendants made a false statement of material fact, that they did so knowingly to entice plaintiffs to sell the property, and that the plaintiffs relied on those promises to their detriment by selling the house at a price lower than the market demanded. The fraudulent inducement claims against Villa Pointe LLC also survive a motion to dismiss because, as described in the Amended Complaint, it is alleged that the Gallucci Defendants created this LLC to further this fraud on the plaintiffs and have the plaintiffs assign the Gallucci Defendants' rights under the contract to this entity. Accepting the factual allegations in the complaint, the plaintiffs have stated claims for fraudulent inducement against the Gallucci Defendants and Villa Pointe LLC that meet the pleading requirements of Rules 9(b) and 12(b)(6) and, thus, the motion to dismiss on such grounds is denied.

### (iii) The Merger Clause

The defendants also argue that there can be no fraudulent inducement claim because plaintiffs signed a fully integrated contract that contains a merger clause which states that no representations were relied upon except those contained in the contract.[5] (Defs.' Supp.

---

[4] Although defendants argue that "[n]o where in the Plaintiff's voluminous allegations did they ever allege that the Defendants promised that they would never tear the house down nor alter the house and build a McMansion," the Court finds that the allegations in the complaint, as listed above, state an alleged misrepresentation.

[5] As noted *supra,* as a general rule, a plaintiff cannot maintain a claim for fraud brought alongside a breach of contract claim. *Bridgestone/Firestone, Inc. v. Recovery Credit*

Br., at 4-6.) As discussed below, the Court disagrees and finds that, under well-settled New York law, a general merger clause as used in the instant contract is insufficient to preclude a fraudulent inducement claim based upon reliance on an oral misrepresentation.

It is well-settled that a *general* merger clause is generally insufficient to exclude parol evidence to show fraud in the inducement. *See Sabo,* 3 N.Y.2d at 162 ("[A] contractual promise made with the undisclosed intention not to perform it constitutes fraud and, despite the so-called merger clause, the plaintiff is free to prove that he was induced by false and fraudulent misrepresentations to assign his patents and execute the agreements."); *see also Mfrs. Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 315 (2d Cir. 1993) (holding, under New York law, that "a general merger clause is ineffective, however, to preclude parol evidence that a party was induced to enter the contract by means of fraud").

Instead, the parol evidence rule bars such a claim where the merger clause contains an explicit disclaimer regarding the same subject matter as the alleged oral representation. *See Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 95 (N.Y. 1985); *Danann Realty Corp.* v. *Harris*, 5 N.Y.2d 317, 320 (N.Y. 1959). Thus, "when . . . the contract states that a contracting party disclaims the existence of or reliance upon specified representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations." *Yanakas,* 7 F.3d at 315 (citing *Plapinger* and *Danann*); *see also Getty Petroleum Corp. v. DeIorio*, 194 A.D.2d 762, 763 (N.Y. App. Div. 1993) ("Although a general merger clause is generally insufficient to exclude parol evidence to show fraud in the inducement (*see, Sabo v. Delman,* 3 NY2d 155), the parol evidence rule will apply here, where the parties include a disclaimer as to specific representations. . . .") (citations omitted).

In the instant case, the merger clause at issue is clearly general in nature. Paragraph 28 of the contract of sale – the merger provision – states:

> All prior understandings, agreements, representations and warranties, oral or written, between seller and purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(Defs.' Exh. B ¶ 28.). The merger clause contains the standard boilerplate that typifies a general merger clause, and does not contain any language specific to the representations at issue here. Therefore, this general merger clause does not preclude plaintiffs' fraudulent inducement claim based upon alleged oral misrepresentations.

---

*Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). There are three exceptions to this rule, however, one of which is relevant here: when a plaintiff alleges the fraudulent misrepresentation is collateral or extraneous to the contract. *Id.* Defendants argue that the alleged oral statements concerned the same subject matter as in the contract's merger agreement and that they are thus not sufficiently collateral to sustain a claim of fraudulent inducement. As demonstrated *supra*, the Court finds the alleged oral statements to be sufficiently collateral to survive a motion to dismiss. Accordingly, plaintiffs may maintain their fraudulent inducement claim.

Although defendants cite a number of New York cases in arguing that the parol evidence rule applies here because the contract contained a merger clause, the cases cited by defendant that bar parol evidence in fraud cases are all instances where the oral representations made by the plaintiff directly contradict a specific provision in the agreement. For example, in *Dannan Realty Corp.*, 5 N.Y.2d at 320-23, the court dismissed a fraudulent inducement claim in the contract of sale of a lease of a building based on alleged false statements regarding operating expenses and profits. Although the merger clause in the agreement contained general language similar to the language in the instant case, it also contained a specific disclaimer of prior representations regarding, among other things, expenses or operation: "The Seller has not made and does not make any representations as to the physical condition, rents, leases, expenses, operation or any other matters or thing affecting or related to the aforesaid premises, except as herein specifically set forth. . . ." *Id.* at 321. In dismissing the claim and distinguishing the cases where general mergers were found to be insufficient to defeat such a claim, the court noted that "plaintiff has in the plainest language announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded." *Id.* at 320. The *Dannan* holding is inapplicable here where the contract did not have a specific disclaimer with respect to representations regarding the existing intention with respect to future use of the property, but rather had a general merger clause. *See also Getty,* 194 A.D.2d at 763 ("Here, the merger clauses contained in the agreements clearly provided that Getty did not, in any way, represent or warrant the fitness of the premises for the use contemplated by the lessee and it was the lessee's obligation to make the premises fit at its sole cost and expense.").

Defendants' heavy reliance on *Citibank, N.A. v. Plapinger* is similarly misplaced. In *Citibank,* in an action about a guarantee by defendant corporate officers of the corporation's indebtedness, the defendants claimed reliance on the oral representation that the plaintiff lending banks were committed to extending to the corporation an additional line of credit. The Court found that the merger clause in the guarantee, although not having a disclaimer as specific as the one in *Danann,* was sufficiently specific to preclude the fraudulent inducement claim because, "following extended negotiations between sophisticated business people, what has been hammered out is a multimillion dollar personal guarantee proclaimed by defendants to be 'absolute and unconditional.'" *Citibank, N.A.*, 66 N.Y.2d at 95. The Court further noted that the unconditional nature of the agreement was "reinforced" by additional language that the guarantee was "'irrespective of (I) any lack of validity * * * or the * * * Restated Loan Agreement * * * or any other agreement or instrument relating thereto', or '(vii) any other circumstance which might otherwise constitute a defense' to the guarantee." *Id.* This holding in *Citibank,* regarding negotiations by sophisticated businessmen with this language about an "absolute and unconditional guarantee," as well as the above-referenced additional language, does not apply to the instant case where the merger clause utilized by the parties in the contract of sale for the Residence was clearly a general merger clause.[6] *See Yanakas,* 7 F.3d at 316

---

[6] Although defendants ask the Court to look at the exhibits and affidavits attached to their moving papers as evidence that the housing contract was

16

("Given the *Plapinger* court's emphasis on the fact that the defendants there had negotiated an agreement in which they expressly waived any challenge to the validity of the guarantee itself, we are of the view that the ruling in *Plapinger* does not materially alter the principle established by *Danann*. This view is supported by many state court decisions since *Plapinger* that have ruled that the mere general recitation that a guarantee is 'absolute and unconditional' is insufficient under *Plapinger* to bar a defense of fraudulent inducement, and that the touchstone is specificity." ); *see also Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC,* No. 01 Civ. 6600 (RLC), 2005 WL 3370542 (S.D.N.Y. Dec. 12, 2005) ("The disclaimer in question appears at the end of warranties and representations section of the agreement and reiterates that no warranties or representations shall be made other than those in the immediately preceding section. This is, by nature, a general disclaimer; it lacks the specificity to meet the standard the Second Circuit has applied under New York law. New York law requires more than a generalized boilerplate exclusion [clause], a disclaimer must speak directly to the matter at issue in order to preclude a claim of fraud in the inducement.") (footnotes, quotations, and citations omitted).

Accordingly, plaintiffs' fraudulent inducement claims are not precluded by the boilerplate general merger clause contained in the contract of sale.[7]

In sum, under the motion to dismiss standard, the Court rejects the various arguments made by the Gallucci Defendants and Villa Pointe LLC regarding their motion to dismiss the fraudulent inducement claims. The Court recognizes that defendants have, in their motion papers, alluded to various aspects of the circumstances surrounding the alleged misrepresentations (including the merger clause) that they believe will make it impossible for any rational jury to find that these statements, even if made, were material or reasonably relied upon by the plaintiffs. The defendants also suggest that plaintiffs will be unable to demonstrate that these alleged misrepresentations regarding future use were false *at the time they were made*, simply because the Gallucci Defendants subsequently tore down the home.[8] However, those factual

---

created by plaintiffs' attorney, not the defendants' attorney as plaintiffs contend, the Court will not do so at the motion to dismiss stage. In any event, the Court does not believe, given the general merger clause utilized here, that the issue regarding who drafted the clause is dispositive. *See, e.g., Superior Technical Res. Inc. v. Lawson Software, Inc.,* No. 2003-10104, 2007 WL 4291575, at *11 (N.Y. Sup. Ct. Dec. 7, 2007) ("While the record reflects that the material terms of the License Agreement were actively negotiated, there is no evidence that the integration clause itself was addressed as a material term or that its disclaimer language was the subject of negotiation. Rather, the License Agreement has all the earmarks of a pre-printed form containing a standard and general integration clause designed to preclude parol evidence from being used in the interpretation of the agreement. . . . The Court construes the integration clause here as too standard and non-specific to determine as a matter of law that Superior's first and fourth causes of action must be dismissed.").

---

[7] Given that the Court finds the merger clause argument to be inapplicable in this situation, defendants' arguments regarding the assignment of such a merger clause to Villa Pointe is thereby rendered moot.

[8] As New York courts have repeatedly emphasized, in order to sustain a claim for fraudulent inducement under New York law in this context, "the misrepresentations alleged in the

17

issues, which cannot be decided on a motion to dismiss when taking the allegations of the Amended Complaint as true, are properly left for summary judgment. Accordingly, the motion to dismiss the fraudulent inducement claims against the Gallucci Defendants and Villa Pointe LLC is denied.

b. Nicotra Defendants

Plaintiffs also allege fraudulent inducement claims against the Nicotra Defendants. The Court finds that plaintiffs fail to allege the required elements of fraudulent inducement under Rule 12(b)(6) and fail to plead with particularity as required by Rule 9(b) in alleging claims against the Nicotra Defendants. Specifically, unlike the specifically alleged conversations and representations made by the Gallucci Defendants, there are no specific allegations that the Nicotra Defendants had similar conversations with plaintiffs regarding the Gallucci Defendants' intentions regarding use of the property, or were even present when plaintiffs had the conversations with the Gallucci Defendants regarding the alleged material misrepresentations. As discussed below, generalized allegations of a conspiracy based upon the Nicotra Defendants' alleged profiting from the subsequent development of the new homes on the property are insufficient to satisfy Rule 9(b).

Plaintiffs allege that "[o]ver a period of many months, the Nicotra Defendants made repeated statements to the Plaintiffs, encouraging the Plaintiffs to sell their home to the Gallucci Defendants, in order to profit from the tearing down and redevelopment of Plaintiffs' Home." (Am. Compl. ¶ 12.) Plaintiffs fail to allege any specific representation made by the Nicotra Defendants upon which the plaintiffs could have relied in deciding to sell the Residence to the Gallucci Defendants. Furthermore, this allegation fails to meet the standard of specificity required by Rule 9(b) that the pleading "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills*, 12 F.3d at 1175. The Court finds that plaintiffs do not state a claim of fraud against the Nicotra Defendants.

The Court liberally interprets *pro se* plaintiffs' complaint to be one of civil conspiracy under New York law. A claim of conspiracy may lie where an underlying tort of fraud has been adequately pleaded. *See Baker v. R.T. Vanderbilt Co.*, 260 A.D.2d 750, 752-53 (N.Y. App. Div. 1999) (citations omitted) ("Since New York does not recognize an independent tort of civil conspiracy, such a cause of action is available

---

pleadings must be more than merely promissory statements about what is to be done in the future; they must be misstatements of material fact or promises made with a present, albeit undisclosed, intent not to perform them." *Shlang v. Bear's Estates Dev. of Smallwood, N.Y., Inc.,* 194 A.D.2d 914, 915 (N.Y. App. Div. 1993) (citation omitted); *see also Edelman v. Buchanan,* 234 A.D.2d 675, 676 (N.Y. App. Div. 1996) ("Significantly, [t]he mere fact that the expected performance was not realized is insufficient to demonstrate that [the promisor] falsely stated its intentions. . . .") (quotations and citations omitted); *Brown*, 76 A.D.2d at 732-33 ("In order to establish actual fraud it was incumbent upon plaintiff to prove scienter, that is, that at the time he contracted, the defendant had no intention of making the required loan. . . . Where the only proof is that the defendant failed to keep his promise, it is insufficient to establish that the defendant did not intent to perform at the time the promise was made. . . .") (citations and emphasis omitted).

only if there is evidence of an underlying actionable tort."). A claim of civil conspiracy under New York Law "requires '(i) an agreement between the conspirator and the wrongdoer and (ii) a wrongful act committed in furtherance of the conspiracy.'" *Gabriel Capital, L.P. v. NatWest Fin., Inc.*, 94 F. Supp. 2d 491, 511 (S.D.N.Y. 2000) (quoting *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 482 (E.D.N.Y. 1998), *aff'd,* 205 F.3d 1327 (2d Cir. 2000)); *see also AM Cosmetics, Inc. v. Solomon*, 67 F. Supp. 2d 312, 322 (S.D.N.Y. 1999) ("Plaintiffs may plead the existence of a conspiracy in order to connect the actions of the individual Defendants with an actionable, underlying tort, and establish that those actions were a part of a common scheme.") (citing *Litras v. Litras*, 254 A.D.2d 395, 396 (N.Y. 1998)); *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir. 1981) ("The allegation 'is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts.'") (quoting *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir. 1956)). "Allegations of a civil conspiracy, therefore, are proper only for the purpose of establishing joint liability by co-participants in tortious conduct." *John's Insulation, Inc. v. Siska Constr. Co.*, 774 F. Supp. 156, 162 (S.D.N.Y. 1991). However, "to survive a motion to dismiss, a complaint must contain more than general allegations in support of the conspiracy. Rather, it must allege the specific times, facts, and circumstances of the alleged conspiracy." *Fitzgerald v. Field*, No. 99 Civ. 3406 (RWS), 1999 WL 1021568, *4 (S.D.N.Y. Nov. 9, 1999) (citations omitted). "Accordingly, a bare conclusory allegation of conspiracy does not state a cause of action." *Grove Press, Inc.*, 649 F.2d at 123 (citing *Goldstein v. Siegel*, 19 A.D.2d 489, 493 (N.Y. App. Div. 1963)).

To the extent that plaintiffs are attempting to plead a claim of conspiracy against the Nicotra Defendants by alleging the existence of an agreement and a wrongful act committed in furtherance of that agreement, their claim fails. Here, plaintiffs attempt to extend liability for the alleged fraud to the Nicotra Defendants by alleging that they "intended to develop the home together" and "surreptitiously hid the fact that they had a plan to jointly develop the Plaintiffs' property and Home. (Am. Compl. ¶¶ 63, 64.) These allegations are wholly conclusory. Plaintiffs fail to allege specific facts regarding this alleged conspiracy that survive Rule 9(b).[9] Accordingly, the fraud and conspiracy claims against the Nicotra Defendants are dismissed. However, because the plaintiffs may be able to remedy this pleading defect, the Court will provide plaintiffs with an opportunity to replead against the Nicotra Defendants. *See Luce v. Edelstein,* 802 F.2d 49, 56 (2d Cir. 1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend.") (quoting 2A J. Moore & J. Lucas *Moore's Federal Practice,* ¶ 9.03 at 9-34 (2d ed. 1986)); *see also Blaize-Sampeur v. McDowell,* No. 05-CV-4275 (JFB) (ARL), 2006 WL 3903957, at *9 (E.D.N.Y. Oct. 18, 2005) (outlining standard and granting plaintiffs opportunity to replead to correct pleading defects). Though it appears that the allegations of fraud are focused on the Gallucci Defendants, the Court cannot conclude that any effort to replead against the Nicotra Defendants will necessarily be futile.

---

[9] The primary authority cited by plaintiffs in their opposition brief relate to general partnership and joint and several liability. Those legal concepts do not immunize them from satisfying Rule 9(b) in this case by providing sufficient details concerning the Nicotra Defendants' alleged involvement in this fraud.

Moreover, there is no other basis, such as bad faith or undue delay, to warrant denial of leave to amend. Accordingly, plaintiffs will be given an opportunity to replead as to the Nicotra Defendants.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part. In particular, defendants' motion is GRANTED with respect to the breach of contract claim, and all claims against the Nicotra Defendants. The motion is DENIED in all other respects. Plaintiffs have until June 13, 2008 if they wish to file an Amended Complaint with additional allegations against the Nicotra Defendants.

SO ORDERED.

———————————
JOSEPH F. BIANCO
United States District Judge

Dated: May 12, 2008
Central Islip, New York


\* \* \*

Plaintiffs are proceeding *pro-se*. The attorney for defendants is J. Edward Gathman Jr., Esq., of Gathman & Bennett LLP, 191 New York Avenue, 2nd Floor, Huntington, NY 11743.